# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **AARON J. RAMBO,**<br>        Petitioner, | |
| v. | Civ. No. _____ |
| **DAVID WINN, as Warden of FMC Devens,**<br>**and**<br>**JOHN ASHCROFT, as Attorney General of**<br>**the United States,**<br>        Respondents. | |

## MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF *HABEAS CORPUS* PURSUANT TO 28 U.S.C. §2241.

## I.     INTRODUCTION

Now comes the Petitioner, Aaron J. Rambo, and in support of his Petition for a Writ of *Habeas Corpus* submits the within Memorandum of Law.

This Petition arises out of Rambo's conviction on one count of using a facility of interstate commerce to entice a person not yet 18 years of age to engage in sexual activity, in violation of 18 U.S.C. §2422(b), for which the Petitioner was sentenced to 27 months, plus three years supervised release. The Petition is brought to challenge the Bureau of Prison's illegal and arbitrary denial of 54 days per year good conduct time (GCT), to which the Petitioner is statutorily entitled pursuant to 18 U.S.C. §3624(b); and the Bureau of Prison's illegal and arbitrary exclusion of the Petitioner from consideration for service of the final six months of his sentence at a Community Corrections Center, in violation 18 U.S.C. §3621(b).

Because the Petitioner's detention violates the laws of the United States, and the Petitioner's right to due process of law, this Court must grant the requested relief.

## II.    FACTS AND PROCEDURAL HISTORY

On July 22, 2003, the Petitioner, a resident of the State of Indiana, was arrested and charged in the Northern District of Ohio, Eastern Division (Akron), with violations of 18 U.S.C. §§1470 and 2422(b). A three count indictment was returned on August 19, 2003, *United States v. Aaron Rambo*, No. 5:03-cr- 00342-PAG. (Ex. B.)

On October 29, 2003, the Petitioner pleaded guilty to Count One of the indictment, charging violation 18 U.S.C. §2422(b), pursuant to a plea agreement which provided for the dismissal of Counts Two and Three. On February 17, 2004, District Court Judge Patricia A. Gaughan, sentenced the Petitioner to a term of imprisonment of 27 months with 3 years supervised release. Counts Two and Three were dismissed. (Ex. A, #27.)

In due course, the Petitioner was designated by the Bureau of Prisons (BOP) to FMC Devens, Low, located in Ayer, Massachusetts. The Respondent, David Winn, is the Warden of FMC Devens. The Petitioner arrived at the facility on April 21, 2004. (See, Ex. D.)

On June 16, 2004, the Petitioner received a Progress Report from his Unit Case Manager, Regina Hufnagle. (Ex. D.) The Progress Report included the following relevant information:

> 5.    **Present Security/Custody Level**
> Low/In

7.    **Sentence**
Current Sentence: 27 Months, 3 Years Supervised Release
Expiration Full Term Date: October 18, 2005

8.    **Sentence Began**
February 13, 2004

9.    **Months Served + Jail Credit**
3 Months + 206 Days JCT[1]

10.   **Days GCT[2]/or EGT/SGT**
105 days Possible

12.   **Projected Release**
July 5, 2005 via GCT REL[3]

16.   **INSTITUTIONAL ADJUSTMENT:** Inmate Rambo was received at
FMC Devens, Law, MA on April 21, 2004. Since his arrival at this
facility, inmate Rambo has maintained an average institutional
adjustment.

**A. Program Plan:** Inmate Rambo appeared before his Unit Team on
May 26, 2004, at FMC Devens, Low, for his initial classification. It
was recommended by his Unit Team that he receive above average
work performance evaluations, maintain cell sanitation, maintain
clear conduct, and participate in psychological counseling. Also, he
was encouraged to complete two Release Preparation Program
classes, and complete an additional Adult Continuing Education
class. Long term goals included: completing the Release
preparation Program, completing the Victim Impact Panel Group,
maintaining family contact, saving money for release purposes, and
completing at least two ACE classes per year.

**B. Work Assignments:** Inmate Rambo has been assigned to the
Food Service Department since May 4, 2004. Unit Team has not
received a work performance evaluation for this period.

**E. Incident Reports:** Inmate Rambo has not received any incident
reports during his incarceration with the Federal Bureau of Prisons.

17.   **RELEASE PLANNING:** Inmate Rambo is requesting relocation to
the Southern District of Indiana for his supervised release. He
intends to reside with his parents in Greencastle, Indiana, until he
can secure an apartment in the Indianapolis, Indiana, area with
prior approval from his Probation Officer. Once his supervised

---

[1]    "JCT" refers to jail credit time.
[2]    "GCT" refers to good conduct time.
[3]    "GCT REL" refers to the projected release date upon the award of the maximum possible
good conduct time.

release relocation is accepted, inmate Rambo will be recommended for a Community Corrections Center placement date of April 26, 2005. He intends to secure employment while in the halfway house.

This information was updated by a Progress Report dated August 17, 2004. (Ex. E.) It contained substantially the same information, with the following relevant changes (noted by emphasis):

10. **Days GCT/or EGT/SGT**
    105 days Possible
    *54 days awarded*

12. **Projected Release**
    *July 4, 2005* via GCT REL[4]

16. **INSTITUTIONAL ADJUSTMENT:** Inmate Rambo was received at FMC Devens, Law, MA on April 21, 2004. *Since his arrival at this facility, inmate Rambo has maintained a good institutional adjustment.*

    **B. Work Assignments:** Inmate Rambo has been assigned to the Food Service Department since May 4, 2004. *He has received outstanding work performance evaluations. He is considered an excellent worked with a good work ethic.*

17. **RELEASE PLANNING:** *Inmate Rambo is requesting relocation to the Southern District of Indiana for his supervised release and was accepted.*[5] He intends to reside with his parents in Greencastle, Indiana, until he can secure an apartment in the Indianapolis, Indiana, area with prior approval from his Probation Officer. Inmate Rambo is being recommended for a Community Corrections Center placement of April 25, 2005. He intends to secure employment while in the halfway house.

As described in detail below, the calculation of 105 days for the Petitioner's possible GCT represents an award of 47 days per year, in violation of the clear statutory mandate, set out in 18 U.S.C. §3624(b), that a federal inmate receive 54 days credit for each year of imprisonment. As further described below, the projected date of April 26, 2005, for transfer to a CCC, implements an ill

---

[4]     It is unclear why the Projected Release Date has been moved up by one day from July 5.
[5]     The updated form thus further provides that the Supervising District will be the Southern District of Indiana. (Ex. E, ¶17C.)

conceived and unsupportable rule adopted by the BOP upon direction from the

Department of Justice, which, contrary to 18 U.S.C. §3621(b), limits an inmate's

eligibility to serve any portion of his sentence at a CCC to no more than 10% of

the sentence, not to exceed 6 months.[6] Both these errors contribute to the illegal

execution of the Petitioner's sentence, and are subject to remediation by this

Court pursuant to 28 U.S.C. §2241. See, *Chambers v. United States*, 106 F. 3d 472,

474-475 (2d Cir., 1997) ("A challenge to the execution of a sentence … is properly

filed pursuant to Section 2241); *Villanueva v. United States*, 346 F. 3d 55, 63 (2d

Cir., 2003 ) (challenge to BOP's calculation of petitioner's sentence is properly

brought pursuant to §2241).

### III.    ARGUMENT

#### A.    The BOP's policy of awarding a maximum of 47 days GCT per year for each year of imprisonment violates 18 U.S.C. §3624(b).

The award of good time credit is governed by statute. 18 U.S.C. §3624(b)

provides in part:

> a prisoner who is serving a ***term of imprisonment*** of more than 1 year … may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's ***term of imprisonment***, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.… [C]redit for the last year or portion of a year of the ***term of imprisonment*** shall be prorated and credited within the last six weeks of the sentence. (Emphasis added.)

The award of GCT is closely tied to an inmate's "term of imprisonment," a

---

[6]    As discussed more fully below, in *Goldings v. Winn*, 383 F.3d 17 (1st Cir., 2004) the First Circuit recently found that the BOP's "new policy is contrary to the plain meaning of 18 U.S.C. §3621(b)," and held that the statute "authorizes the BOP to transfer [an inmate] to a CCC at any time during his prison term." *Id*, at 18, 28.

phrase used three times in this section. Looking at the first appearance of the phrase, it is clear GCT is available only to those inmates whose "term of imprisonment," is more than one year. Here, there is no question that the Petitioner qualifies. His "term of imprisonment" is 27 months. Continuing to read the statute in a straightforward manner, one would think that the Petitioner, if he displayed exemplary compliance with regulations[7], would receive 54 days for the first year of his term, 54 days for the second year, and 13 days for the remaining 3 months (representing 25% of 54), for a total of 121 days GCT.

Yet, the BOP has determined that no inmate, no matter how well behaved, may receive no more than 47 days for each year of his "term of imprisonment." Thus, according to the BOP, the Petitioner is to receive 47 days for the first year of his term, 47 days for the second year, and 11 days for the remaining 3 months (representing 25% of 47), for a total of 105 days. (See, Ex. D & E, ¶10.) This strange result is accomplished though an interpretive sleight of hand, by which the phrase used by Congress, "term of imprisonment," is, in its second appearance in the statute, rejected in favor of the phrase "number of days actually served." Thus, the BOP has issued the following instructions:

> Since, in accordance with the statute (18 U.S.C. § 3624(b)), no GCT can be awarded to a sentence of one year or less, then the very shortest sentence that can be awarded GCT is a sentence of 1 year and 1 day. Because a prisoner would accrue GCT while serving a sentence of 1 year and 1 day and, therefore, serve something less than the full sentence, it would be impossible to accrue the full 54 days of GCT for a sentence of 1 year and 1 day.

> ****

> It is essential to learn that GCT is not awarded on the basis of the length of the sentence imposed, but rather on the

---

[7] There is no question, based on the excerpts from the Progress Reports cited above, that the Petitioner has shown exemplary compliance.

> number of days actually served. In other words, when the
> GCT awarded plus the number of days actually served
> equals the days remaining on the sentence, then the prisoner
> shall be released on the date arrived at in the computation
> process (days remaining on sentence - (GCT + days served)
> = release date).

BOP Policy Statement 5880.28, p 1-45, 1-48. (See, Ex. C.)

To implement this rewriting of the statute, the BOP has outlined a

convoluted algorithm, the net result of which is to deny inmates the statutorily

mandated 54 days per year. The following example for a term of imprisonment

of 1 year and 1 day is taken from Policy Statement 5880.28. Interestingly, it

begins by giving, but then taking away, the 54 days per year allotted by statute.

Paraphrasing the BOP's example, its method amounts to the following:

1.    For the first year, deduct 54 days as Congress prescribes:

    $366 - 54 = 312$[8]    But this means the inmate will have served
    only 312 days, less than 1 year. Therefore, …

2.    Apply a factor of .148, representing the prorated GCT per day ($54 \div 365$) to 312, the number of days to be served as determined above:

    $312 \times .148 = 46$[9]    But 46 GCT plus 312 days to be served results
    in only 358 days.[10] It is evident, however, that
    the inmate must serve more than 312 days,
    because $312 + 46 < 366$. Therefore, …

3.    Recalculate Step 1, deducting 46 days rather then 54:

    $366 - 46 = 320$[11]    Now apply the factor .148 to calculate the GCT
    earned on time served of 320 days.[12]

4.    $320 \times .148 = 47$    Finally, deduct 47 days GCT from the sentence
    of 366 days, to arrive at the number of days to
    be served.

---

[8]    Ex. C, BOP PS 5880.28, p. 1-45, Step 1
[9]    *Id.*, Step 2. In all cases fractions have been rounded down.
[10]    *Id.*, Step 3.
[11]    *Id.*, Step 3.
[12]    *Id.*, Step 4.

5.      $366 - 47 = 319^{13}$

As subsequent examples provided by the BOP make clear, 47 days is the maximum allowable GCT for each year of any sentence, more than one year in length. To calculate good time on the basis of time served ***after good time is deducted***, rather than on the basis of the "term of imprisonment" imposed by the Court, is perverse and contrary to the plain meaning of the statute. Congress intended no such absurd result.

### 1.    18 U.S.C. §3624(b) unambiguously requires that the award of GCT be based on the term of imprisonment imposed by the Court.

The statute itself unambiguously calls for GCT to be awarded at the end of each year of the "term of imprisonment," a phrase used three times in §3624(b). Yet in the second appearance of the phrase, the BOP substitutes time "actually served" for "term of imprisonment." This substitution is clearly impermissible. Identical words used in different parts of the same statute are intended to have the same meaning. *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990).

Nowhere does the statute refer to time actually served after good time is awarded. Moreover, the phrase "term of imprisonment" is common, appearing throughout the United States Code[14], and has a well understood meaning. In all cases, it refers to the sentence imposed by the Court. This is made explicit by 18 U.S.C. §4101(b) which defines "imprisonment" as "a penalty imposed by a court under which the individual is confined to an institution." Thus, 18 U.S.C. §3582(a) requires the Court to consider specific sentencing factors in

---

[13]       *Id.*, Step 6.
[14]       A search of the Library of Congress web site, http://thomas.loc.gov/, shows 117 documents in the U.S. Code using the phrase "term of imprisonment." The list is included as Ex. AA.

"determining whether to impose a term of imprisonment." And 18 U.S.C.

§3583(a) provides that the Court, "in imposing a sentence to a term of

imprisonment … may include as part of the sentence … a term of supervised

release after imprisonment."[15]

The Sentencing Guidelines are in accord. 28 U.S.C. §994, the statute

authorizing promulgation of the Guidelines, uses the phrase numerous times to

mean the sentence actually imposed by the Court.[16] The Guidelines naturally

follow suit. U.S.S.G. §5C1.1 (a), captioned "Imposition of a Term of

Imprisonment," provides, "A sentence conforms with the guidelines for

imprisonment if it is within the minimum and maximum terms of the applicable

guideline range." The notion that the phrase "term of imprisonment" means

anything other than the sentence imposed by the Court is nowhere in evidence. It

would be absurd to equate the "term of imprisonment" with the time actually

served; where the time served was less than the guideline range, which will

almost always be the case, such sentences would be impermissible under the

Guidelines and 18 U.S.C. §3553(b) (the Court shall impose a sentence within the

guideline range).

Where a statute is unambiguous, and "the intent of Congress is clear, that

is the end of the matter; for the court, as well as the agency, must give effect to

the unambiguously expressed intent of Congress." *Chevron USA v. Natural

Resources Defense Council*, 467 US 837, 842-843 (1984). An agency is owed no

deference in the interpretation of a statute, where the statute itself is clear. *United

States v. LaBonte*, 520 US 751, 762, n. 6 (1997). See also, *INS v. Cardoza-Fonseca*, 480

---

[15]     These and other references to "term of imprisonment" in Title 18 are included in Ex. BB.
[16]     Excerpts from 28 U.S.C. §994 emphasizing "term of imprisonment" are included in Ex.
CC.

US 421, 431 (1987) (statute's ordinary and obvious meaning may not be discounted); and *Russello v. United States*, 464 US 16, 23 (1983) (it is presumed Congress acts intentionally and purposefully in choosing statutory language). Thus, the BOP may not strike the unambiguous phrase "term of imprisonment" and substitute "time actually served." The BOP has no authority to make this policy decision; the decision has already been made by Congress. Compare, *Orca Bay Seafoods v. Northwest Truck Sales, Inc.*, 32 F. 3d 433 (9th Cir., 1994) (despite policy justification, Secretary of Transportation may not exclude vehicles from unambiguous statutory definition.)

> ### 2. The legislative history of the statute demonstrates Congress intended that GCT be awarded on a simple calculation based on the term of imprisonment imposed by the Court.

The legislative history of the statute demonstrates without question that Congress intended GCT be awarded on the basis of the term of imprisonment imposed, and not on the length of time actually served. In fact, the history shows that Congress specifically rejected the method of calculating GCT adopted by the Bureau of Prisons.

The situation is aptly captured by *Hunter v. Facchine*, 195 F. 2d 1007 (10th Cir., 1952), and its aftermath. In *Facchine*, the Court was dealing with the newly amended 18 U.S.C. §4161, the predecessor to §3624(b). The earlier version of the statute, enacted in 1902, had provided that a deserving inmate,

> [S]hall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, as follows:
> Five days for each month, if the sentence is not less than six months and not more than one year;
> Six days for each month, if the sentence is more than

> one yare and less than three years.
>> Seven days for each month, if the sentence is not less than three years and less than five years....

Under this regime, good time was deducted based on the length of the sentenced

imposed, according to the schedule set out in the statute.

Thereafter, in 1948, the statute was amended to provide that the deserving

inmate,

> [S]hall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, *to be credited as earned and computed monthly*, as follows.... (Emphasis added.)

This amendment, adding the phase "to be credited as earned and

computed monthly," was construed by the Court in *Facchine* to require that good

time credit be deducted from the days actually served, and not from the length of

the sentence imposed. Thus in the case of a 4 year sentence:

> The new section does not require that this prisoner be credited with 7 days per month for 48 months, or a total of 336 days. It requires only that each month he be credited with the days actually served and an additional 7 days for earned good time and that these 7 days be credited monthly, as the months go by. When a point is reached where the actual days served plus the total credits of 7 days for each month actually served equals 1460 days, the total days of the 4 year sentence, the prisoner is entitled to his release.

*Facchine, supra* at 1008-1009.

This decision spurred Congress to amend the statue again, deleting the

offending phrase. Congress explained its intent as follows:

> The Attorney General points out further that in *Hunter v. Facchine*, the new language was interpreted as requiring good-time to be computed on the basis of actual time served rather than on the basis of the term of the sentence as imposed by the court. The effect of this interpretation is to require well-behaved prisoners to serve longer periods of confinement than they would under the method of computation which had been used through half a century.

> The proposed legislation, by deleting the words "to be credited as earned and computed monthly," is designed to provide for the return to the method of computing good conduct time which was followed between 1902 and 1948.

H.R. No. 935, 86th Cong., 1st Sess. reprinted in 1959 U.S. C.C.A.N. 2518, 2519.

The current statute adopts the pre-1948 and post-1959 approach, deliberately tying the award of good conduct time to the well understood phrase, "term of imprisonment," and deliberately avoiding such language as "to be credited as earned and computed monthly." This Court must presume that the amendment of the good time statute, eliminating the requirement that GCT be "credited as earned and computed monthly," in favor of the time honored approach of crediting good time against the term of imprisonment, was intended to have real and substantial effect. *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

This was certainly the understanding of Senator Joseph Biden, of Delaware, one of the drafters of the present statute. Section 3624(b) was adopted as part of the Comprehensive Crime Control Act of 1984. In 1996, Sen. Biden spoke of §3624(b) in the context of a debate on the need for further anti-crime legislation. His remarks make it clear that good time credit, in the maximum amount of 54 days, or 15% of a year, is to be deducted from length of the sentence imposed by the Court (54 days being, to the nearest day, 15% of one year[17]):

> [In the federal system, w]hen you get sentenced, you go to jail for the totality of that term. I was the coauthor of that bill. In the Federal courts, *if a judge says you are going to go to prison for 10 years, you know you are going to go to prison for at least 85 percent of that time--8.5 years, which is what the law mandates. You can get up to 1.5 years in*

---

[17]    54 days is precisely 14.79% of 365 days.

> *good time credits, but that is all.* And we abolished parole.
> So you know you'll be in prison for at least 8.5 years.
> (Emphasis added.)

141 Cong. Rec. S2348-01 (2/9/96). Courts have operated with a similar

understanding. See, e.g., *United States v. Martin,* 100 F.3d 46, 47 (7th Cir. 1996)

(assuming that prisoner could earn 4.5 years of good conduct time on 30-year

sentence, or 15%); see also *United States v. Prevatte,* 66 F.3d 840, 846 (7th Cir. 1995)

(Posner, J., concurring) (assuming that prisoner can reduce *sentence* through good

conduct time by up to 14.7%).

Congressional intent could not be more apparent: §3624(b)

unambiguously calls for the sentence of a deserving inmate to be reduced by 54

days, for each year of the sentence imposed by the Court, not for each year

actually served by the inmate, after good time has already been deducted.


### 3.    Of those Courts that have considered this issue, the decision in *White v. Scibana*, is most persuasive.

In *White v. Scibana,* 314 F. Supp. 2d 834 (WD Wisc., 2004), the Court

considered the precise issue raised here. The Court found that the phrase "term

of imprisonment" is a "term of art,"

> that Congress has employed in dozens of statutes, many of
> which were part of the Comprehensive Crime Control Act of
> 1984, the same act in which §3624 was included. Throughout
> these statutes, Congress has uniformly used "term of
> imprisonment" as a synonym for "sentence." E.g., 18 U.S.C.
> §3147("A term of imprisonment imposed pursuant to this
> section shall be consecutive to any other sentence of
> imprisonment."); 18 U.S.C. §3156(a)(3) ("The term 'felony'
> means an offense punishable by a maximum term of
> imprisonment of more than one year."); 18 U.S.C. §3582
> (discussing "factors to be considered in imposing a term of
> imprisonment"); 18 U.S.C. §3584(a) ("If multiple terms of
> imprisonment are imposed on a defendant at the same time
> …"); 28 U.S.C. §994(b) ("If a sentence specified by the

> guidelines includes a term of imprisonment, the maximum
> of the range established for such a term shall not exceed the
> minimum of that range by more than 25 per centum."). It is
> fair to assume that if Congress had intended to make the
> calculation for good conduct time contingent on time served
> rather than the sentence imposed, it would not have used a
> phrase with such a clear and consistent meaning throughout
> the United States Code.

*White, supra* at 839. Applying the familiar rule of statutory construction that

"identical words used in different parts of the same statute are presumed to have

the same meaning, *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), the Court found

that §3624(b) unambiguously required the BOP to calculate good time credit on

the basis of length of the sentence imposed, not on the length of time actually

served. *Id.*, at 838. Accordingly, the Court granted the petition for a writ of *habeas*

*corpus*, pursuant to 28 U.S.C. §2241. Numerous other decisions in the Western

District of Wisconsin have followed suit. See, *Scanga v. Scibana*, 2004 U.S. Dist.

LEXIS 15058 (W.D. Wis. Aug. 2, 2004), 2004 U.S. Dist. LEXIS 15058; *Micek v.*

*Scibana*, 2004 U.S. Dist. LEXIS 15053 (W.D. Wis. Aug. 2, 2004),2004 U.S. Dist.

LEXIS 15053; *Caldwell v. Scibana*, 2004 U.S. Dist. LEXIS 15035 (W.D. Wis. Aug. 2,

2004), 2004 U.S. Dist. LEXIS 15035; *Cade v. Scibana*, 2004 U.S. Dist. LEXIS 15050

(W.D. Wis. July 30, 2004), 2004 U.S. Dist. LEXIS 15050; *Williams v. Scibana*, 2004

U.S. Dist. LEXIS 14130 (W.D. Wis. July 20, 2004), 2004 U.S. Dist. LEXIS 14130;

*Collins v. Scibana*, 2004 U.S. Dist. LEXIS 13929 (W.D. Wis. July 20, 2004), 2004 U.S.

Dist. LEXIS 13929; *Fry v. Scibana*, 2004 U.S. Dist. LEXIS 13930 (W.D. Wis. July 19,

2004), 2004 U.S. Dist. LEXIS 13930; *Branch v. Scibana*, 2004 U.S. Dist. LEXIS 13932

(W.D. Wis. July 16, 2004), 2004 U.S. Dist. LEXIS 13932; *Isely v. Scibana*, 2004 U.S.

Dist. LEXIS 13111 (W.D. Wis. July 9, 2004), 2004 U.S. Dist. LEXIS 13111; *Paloian v.*

*Scibana*, 2004 U.S. Dist. LEXIS 11911 (W.D. Wis. June 22, 2004). 2004 U.S. Dist.

LEXIS 11911; *Spohr v. Scibana*, 2004 U.S. Dist. LEXIS 11883 (W.D. Wis. June 22, 2004), 2004 U.S. Dist. LEXIS 11883; *Perry v. Scibana*, 2004 U.S. Dist. LEXIS 10492 (W.D. Wis. June 4, 2004), 2004 U.S. Dist. LEXIS 10492; *Campbell v. Scibana*, 2004 U.S. Dist. LEXIS 10491 (W.D. Wis. June 4, 2004), 2004 U.S. Dist. LEXIS 10491; *Zapata v. Scibana*, 2004 U.S. Dist. LEXIS 10150 (W.D. Wis. June 1, 2004), 2004 U.S. Dist. LEXIS 10150

In ruling as it did, the Court in *White*, declined to follow *Pacheco-Camacho v. Hood*, 272 F. 3d 1266 (9th Cir., 2001), the only circuit opinion to have addressed the issue. The Court in *White* did so for good reason. *Pacheco-Camacho* erred on two scores: first, in finding the phrase "term of imprisonment" to be ambiguous; second in applying administrative law principles, rather than rules of construction for penal statutes, to resolve the ambiguity.

As noted above, there is nothing ambiguous about the phase "term of imprisonment." It is used throughout the criminal code to mean only one thing: the sentence imposed by the Court. The Court in *Pacheco-Camacho* apparently recognized this, and gave obeisance to the principle of consistency, remarking that statutory terms should be interpreted, whenever possible, with an eye to intra-statutory consistency, *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990). Yet the Court found that use of the phrase "term of imprisonment" as used in *§3624(a)*[18] did not provide reason enough to construe the same phrase, when used in *§3624(b)*, consistently. *Id.*, at 1271. But in reasoning thus, the Court failed to recognize that "term of imprisonment" is used *three times* in *§3624(b)*. Surely

---

[18]     18 U.S.C. §3624(a) provides, "Date of release. A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b). If the date for a prisoner's release falls on a Saturday, a Sunday, or a legal holiday at the place of confinement, the prisoner may be released by the Bureau on the last preceding weekday."

such multiple use of the phrase within the very same sentence, within the very same section, demands application of the principle of consistency.

Having thus created an ambiguity by refusing to give the phrase its ordinary meaning, the Court went on to resolve the ambiguity by resort to rules of deference to administrative agencies, asking whether the BOP's interpretation of the statute "is based on a permissible construction of the statute." *Id.*, at 1268, citing, *Chevron U.S.A. , Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984). But this analysis is completely misplaced.

As a law concerning the release and detention of prisoners, 18 U.S.C. §3624(b) is a penal statute. See, *Lynce v. Mathis*, 519 U.S. 433 (1997) (Florida statute governing early release credits is penal); *Weaver v. Graham*, 450 U.S. 24 (1981) (same); *Preiser v. Rodriguez*, 411 U.S. 475 (1973) (New York good time credit law is penal). Accordingly, deference to administrative interpretation of the statute is inappropriate. Where a penal statute is ambiguous, the rule of lenity must be invoked. *Bifulco v. United States,* 447 U.S. 381, 387 (1980). To simply adopt the interpretation of the BOP, an agency of the executive branch, "would turn the normal construction of criminal statutes upside down, replacing the doctrine of lenity with the doctrine of severity." *Crandon v. United States*, 494 U.S. 152, 177-178 (1990) (Scalia, J., concurring).

Thus, the Court has repeatedly held that where, after resort to traditional interpretative aids of the language and structure, the legislative history, and policy of the legislation, doubt persists as to the intended scope of a penal statute, the rule of lenity must be applied. *United States v. R.L.C.*, 503 U.s. 291, 305-306 (1992); *Bifulco, supra* at 387. The rule of lenity applies "not only to interpretations of the substantive ambit of criminal prohibitions, but also to the

penalties they impose." *Id.*

Accordingly, even if this Court were to find that the phrase, "term of imprisonment" is ambiguous, the rule of lenity would require that the phrase be interpreted to mean the sentence actually imposed, such that a deserving inmate may be credited with the full 54 days per year, rather than 47.

> **B.** **The policy of excluding inmates from consideration for transfer to a CCC for service of any portion of their sentence, other than the last 10% thereof, is in violation of the laws of the United States.**

The BOP has notified that Petitioner that he is "being recommended for a Community Corrections Center placement date of April 25, 2005," in the Indianapolis area. (See, Ex. E, ¶17.) Assuming a good conduct release date of July 4, 2005[19], the April 25, 2005 transfer date represents the Petitioner serving exactly the last 10% of his sentence at a CCC. This presumptive transfer to a CCC obviously implements 18 U.S.C. §3624(c), which provides:

> **Pre-release custody.** The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

While the Petitioner has no dispute with the proposed transfer *per se*, he has nonetheless been denied the opportunity to serve a greater portion of his sentence in a CCC, subject to the considered discretion of the BOP, pursuant to

---

[19]       See, Ex. E, ¶12.

18 U.S.C. §3621(b). This has been caused by an erroneous interpretation of

§3621(b), excluding a CCC from the meaning of "correctional facility," and an

improperly promulgated rule implementing that interpretation, purporting to

limit the BOP's discretion in the designation process. This interpretation has been

decisively rejected in *Goldings v. Winn*, 383 F. 3d 17 (1st Cir., 2004).

      1.     **The Bureau of Prisons has discretion pursuant to 18 U.S.C. §3621(b), which it has historically exercised, to designate a prisoner for service of his sentence to a CCC for any portion of the sentence.**

18 U.S.C. §3621(b) provides:

> **Place of imprisonment.** The Bureau of Prisons shall designate the place of the prisoner's imprisonment. *The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau,* whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, *that the Bureau determines to be appropriate and suitable,* considering-
>> (1) the resources of the facility contemplated;
>> (2) the nature and circumstances of the offense;
>> (3) the history and characteristics of the prisoner;
>> (4) any statement by the court that imposed the sentence--
>>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>> (B) recommending a type of penal or correctional facility as appropriate; and
>> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. *The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.* The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of

substance addiction or abuse. (Emphasis added.)

Prior to December, 2002, this statute, like its predecessor, the former 18 U.S.C. §4082(b), was understood by the BOP to authorize the designation of an inmate to a CCC at any time during the inmate's sentence. The BOP has always understood that a community corrections center is a "penal or correctional facility," and never considered §3624(c) a bar to designating an appropriate inmate to a CCC for service of any portion of his sentence. Thus, BOP Program Statement 7310.4, ¶5 (1998)[20], provides:

> ### 5. STATUTORY AUTHORITY
> 18 U.S.C. §3624(c), provides:
>> "The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation Office shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody."
>
> 18 U.S.C. § 3621(b) provides:
>> "The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility ... the Bureau determines to be appropriate and suitable."
>
> *A CCC meets the definition of a "penal or correctional facility."*
>
> *Therefore, the Bureau is not restricted by § 3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the "last ten per centum of the term," or more than six months, if*

---

[20]     See, Ex. O.

*appropriate.* (Emphasis added.)

Similarly, the Department of Justice, in an opinion of the Office of Legal Counsel, dated March 25, 1992, acknowledged that "for many years BOP has, 'with the knowledge of Congress,' contracted 'for the placement of lower security inmates in private facilities, particularly contract Community Treatment Centers,'" and opined:

> There is, moreover, no statutory basis in section 3621(b) for distinguishing between residential community facilities and secure facilities. Because the plain language of section 3621(b) allows BOP to designate "any available penal or correctional facility," we are unwilling to find a limitation on that designation authority based on legislative history. Moreover, the subsequent deletion of the definition of "facility" further undermines the argument that Congress intended to distinguish between residential community facilities and other kinds of facilities.

*Id.*, p. 5-7. (See, Ex. P.)

The Supreme Court recognized that a CCC is a punitive correctional facility when it held that pretrial detention in a CCC entitled a prisoner to full credit against a later-imposed sentence, but that residence in the same CCC as a condition of bail did not. *Reno v. Koray*, 515 U.S. 50, 62 (1995). In so ruling, the Court noted and approved the Program Statement in which the BOP acknowledged a CCC is a "correctional facility," highlighting the significant difference between a defendant being released by a Judge to a CCC as a condition of bail, and a prisoner being placed in a CCC for the service of his sentence. In the latter case, the prisoner "always remain[s] subject to the control of the Bureau." *Id.* at 63.

There is, accordingly, little doubt that §3621(b) grants the BOP "broad discretion" in designating prisoners to any correctional facility, *McCarthy v. Doe*,

146 F. 3d 118, 123 (2d Cir., 1998), including a community correctional facility.

And as the BOP has long recognized, §3624(c) does not limit that discretion. On

the contrary, §3624(c) merely places a limit on each prisoner's *entitlement* to pre-

release consideration to 10% of the sentence, not to exceed 6 months. It does not

limit the BOP, in the exercise of its discretion, to utilize CCCs at any time as the

designated place for the service of a sentence.

The position the government has taken, that §3624(c) somehow limits the

Bureau's discretionary authority under §3621(b), is as the Court aptly put in

*Ferguson v. Ashcroft*, 248 F. Supp. 547, 572 (M.D. La., 2003),

> almost worth preserving for the marvelous irony it foists
> upon the world. As the court reads [§3624(c)], Congress is
> directing the Bureau to do its level best to assure that
> everyone who has served time get a decent opportunity to
> go through a period of readjustment before being thrust
> back into the community. Yet, the Government would have
> the court read this section as a stiff curb on the Bureau's
> ability to make such placements at all. The court finds this
> reading to be implausible. The statute clearly emphasizes the
> Bureau's duty to ensure a reasonable opportunity for a
> period of adjustment. It aims to relieve the burdens of direct
> release on our communities, the inmates, and their families.
> This section does not shrink the discretion granted the
> Bureau in 18 U.S.C. § 3621(b). Instead, it creates an
> obligation in the Bureau to consider alternative means of
> incarceration for limited periods that will facilitate the goal
> of seamless and permanent re-entry. This reading tracks
> precisely the one adopted by the Tenth Circuit. "Our
> interpretation of §3624(c) as a legislative directive focusing
> on the development of conditions to facilitate the inmate's
> adjustment to free society, whatever the institution of pre-
> release confinement, accepts as a premise that the broader
> statutory scheme concerning the Bureau's general placement
> authority remains intact and effective." *Prows v. Federal
> Bureau of Prisons*, 981 F.2d 466, 470 (10th Cir. 1992).

For many years the BOP exercised its discretion under §3621(b) to place an

appropriate inmate in a CCC as a matter of course. Routinely, the BOP would

designate an inmate to a CCC at the outset of a sentence, usually in accord with a

Judge's recommendation, see, *United States v. Serpa*, 251 F. Supp. 2d 988, 989 (D. Mass., 2003); *Iacaboni v. United States*, 251 F. Supp. 2d 1015 (D. Mass., 2003). Just as routinely, the BOP would transfer a deserving inmate to a CCC for the service of the last six months of his sentence. See, *Monahan v. Winn*, 276 F. Supp. 2d 196 (D. Mass., 2003). The practice "goes back continuously for almost forty years." *United States v. Tkabladze*, 2003 U.S. Dist. LEXIS 12946 (C.D. Cal., 2003). Yet, in reliance on an ill-conceived legal opinion from the Department of Justice Office for Legal Counsel issued in December 2002, and an improperly promulgated rule based thereon from the BOP, this long standing practice has been reversed. Without a specific order from a Court, the BOP will now only consider the Petitioner for transfer to a CCC for the last 10% of his sentence, not to exceed six months. In the Petitioner's case, this amounts to slightly more than 2 months and one week.

### 2.    The December 13, 2002, opinion of the Office for Legal Counsel is erroneous.

As noted above, §§3621(b) and 3624(c) set out a rational statutory scheme according to which the BOP is vested with broad discretion to designate any inmate to any appropriate correctional facility, including a CCC, at any time during the sentence. A prisoner is specifically granted the right to expect that the last 10% of his sentence, not to exceed 6 months will be served at a CCC. Consistent with these statutes, the BOP had regularly exercised its discretion to allow prisoners to serve the entirety of relatively short sentence at a CCC; just as it had had allowed deserving prisoners to serve the last 6 months of sentences at a CCC, without regard to the 10% rule.

The Department of Justice sought to put an end to this on December 13, 2002, with an opinion from the Office for Legal Counsel which declared the BOP's practice, as well as the practice of Judges who agreed with the BOP, to be "unlawful." (See, Ex. Q.) As numerous Court have agreed, this opinion was founded on the entirely specious argument that U.S. Sentencing Guideline §5C1.1[21] somehow trumps and "renders 'unlawful' what is lawful under 18 U.S.C. §3621." *Iacaboni v. United States*, 251 F. Supp. 2d 10151033 (D. Mass., 2003); see also, *Monahan v. Winn*, 276 F. Supp. 2d 196 (D. Mass., 2003); *United States v. Tkabladze*, 2003 U.S. Dist. LEXIS 12946 (C.D. Cal., 2003); *Scott v. Federal Bureau of Prisons*, 2004 U.S. Dist. LEXIS 8317 (D.N.J., 2004); *Cioffoletti v. Federal Bureau of Prisons*, 2003 U.S. Dist. LEXIS 21853 (E.D.N.Y., 2003); *Distefano v. Federal Bureau of Prisons*, 2004 U.S. Dist. LEXIS 3190 (S.D.N.Y., 2004); *Zucker v. Menifee*, 2004 U.S. LEXIS 724 (S.D.N.Y., 2004); *Quintero v. Menifee*, 2004 U.S. Dist. 8470 (S.D.N.Y., 2004); *Grimaldi v. Menifee*, 2004 U.S. Dist. 7455 (S.D.N.Y., 2004). *Cato v. Menifee*, 2003 U.S. Dist. LEXIS 21289 (S.D.N.Y., 2003); *Crowley v. Federal Bureau of Prisons*, 312 F. Supp. 2d 453 (S.D.N.Y., 2004). It is undoubtedly the case that where a guideline and statute differ, the guideline must "give way." *United States v. LaBonte*, 520 U.s. 751 (1997). As the Court stated in *Ferguson v. Ashcroft*, 248 F. Supp. 547, 569-570 (M.D. La., 2003),

> The Commission clearly has the statutory authority to limit
> the discretion of the federal district courts in sentencing

---

[21]     The OLC Memo particularly relied on U.S.S.G. §5C1.1(d)(2): "By its plain terms, section 5C1.1 provides only limited authority to a federal court to order that a Zone C sentence of imprisonment be satisfied by community confinement. In particular, it provides only that a federal court may impose a Zone C split sentence under which the sentence of imprisonment "includes a term of supervised release with a condition that substitutes community confinement or home detention ..., provided that at least one-half of the minimum term is satisfied by imprisonment." U.S.S.G. § 5C1.1(d)(2). With respect to Zone C or Zone D simple sentences of imprisonment, section 5C1.1 provides no authority to substitute community confinement for any portion of the sentence." (See, Ex. Q, p.2.)

> matters. And, the federal district courts are explicitly
> directed to conform their sentences to the Sentencing
> Commission Guidelines. But, the Commission's authority
> does not touch that of the Bureau and the Bureau's discretion
> is nowhere hemmed in by the Guidelines.

The BOP has discretionary authority, given by Congress, to designate any

federal inmate to any available penal or correctional facility. That authority has

not been diminished by any subsequent act of Congress, and has certainly not

been affected by the Guidelines. The December 13, 2002, opinion of the OLC to

the contrary is entirely in error.

### 3. In *Goldings v. Winn*, the First Circuit vindicated the Petitioner's position that §3621(b) vests discretion in the BOP to designate an inmate to a CCC at any time.

Very recently, in *Goldings v. Winn*, 383 F. 3d 17 (1st Cir., 2004), the First

Circuit issued an opinion in complete agreement with the Petitioner's position in

this case. The Court explained,

> There is no language in §3621(b) that limits the BOP's
> designation authority to the prisoner's initial place of
> imprisonment. It expressly provides that "[t]he [BOP] may at
> *any time* ... direct the transfer of a prisoner from one penal
> or correctional facility to another." (emphasis added). Thus,
> on its face, §3621(b) permits the BOP to direct Goldings'
> transfer to a CCC prior to the last ten percent of his prison
> term, unless, as the defendants argue, §3621(b) does not
> apply to CCC placements at all because a CCC is not a
> "place of imprisonment."

*Id.*, at 22. But a CCC is most definitely a "place of imprisonment."

> Congress could have, but did not, exclude any particular
> type of penal or correctional facility from the BOP's
> designation or transfer authority. Instead, it defined "place
> of imprisonment" broadly but unambiguously, as "any
> penal or correctional facility" that meets minimum
> standards of health and habitability.... Under §3621(b), the
> BOP has discretionary authority to designate any available
> penal or correctional facility that meets minimum standards

> of health and habitability as the place of a prisoner's imprisonment, and to transfer a prisoner at any time to such a facility. A community correction center is a correctional facility and therefore may serve as a prisoner's place of imprisonment. "When as now, the plain language of a statute unambiguously reveals its meaning, and the revealed meaning is not eccentric, courts need not consult other aids to statutory construction." *United States v. Meade*, 175 F.3d 215, 219 (1st Cir. 1999). Because the intent of Congress is clear in its grant of discretionary authority to the BOP to transfer a prisoner to any available penal or correctional facility, we must give effect to that intent. *Chevron [v. Natural Res. Def. Council, Inc.*, 467 U.S. 837(1984)] at 843. The defendants' interpretation of §3621(b) is contrary to the plain meaning of the statute; it is not entitled to judicial deference.

*Id.*, at 26, 28.

The Court could not have been more clear. The BOP's policy is based on an erroneous interpretation of the law. It is entitled to no deference.

Notwithstanding the Court's clear ruling, the BOP has chosen to utterly ignore *Goldings*. In the final denial of the Administrative Remedy, issued three months after the First Circuit ruled in *Goldings*, the Administrator of National Appeals, explicitly relied on the fact that,

> The US Department of Justice, Office for Legal Counsel, issued an opinion on December 13, 2002, that 18 USC §3624(c) limits the transfer of an inmate to a CCC to the last 10% of an inmate's prison term, not to exceed six months.

(Ex. Z.) This persistence amounts to lawless activity on the part of the BOP.

### 4. The Justice Department's new interpretation of the Bureau of Prison's designation authority was promulgated in violation of the Administrative Procedures Act.

Relying on the OLC's opinion letter of December 13, the Department of Justice issued a memorandum to the BOP on December 16, 2002, directing that the Bureau must stop the "unlawful" practice of designating low-risk offenders

with short terms to a CCC, as well as the practice of transferring offenders to a CCC for service of any more than the lesser of the last 10% of their sentences or six months. (See, Ex. R.) Whereupon, the Director of the BOP issued a memorandum to federal judges informing them that pursuant to the OLC determination that "the Bureau's practice of using CCCs as a substitute for imprisonment" is unlawful, the Bureau would no longer honor judicial recommendations to place inmates in a CCC, nor would it designate inmates to a CCC as a "substitute for imprisonment." (See, Ex. S.)

As numerous courts have found, this radical shift in policy constituted a rule change, which was promulgated in violation of the Administrative Procedures Act. *Iacaboni v. United States,* 251 F. Supp. 2d 10151033 (D. Mass., 2003); *Monahan v. Winn,* 276 F. Supp. 2d 196 (D. Mass., 2003); *Mallory v. United States,* 2003 U.S. Dist. LEXIS 4522 (D. Mass., 2003); *Godbout v. United States,* 2003 U.S. Dist. LEXIS 12294 (D. Mass., 2003); *Byrd v. Moore,* 252 F. Supp. 2d 293 (W.D.N.C., 2003); *Ferguson v. Ashcroft,* 248 F. Supp. 547 (M.D. La., 2003*);Howard v. Ashcroft,* 248 F. Supp. 2d 518 (M.D. La., 2003); *McDonald v. Federal Bureau of Prisons,* 2003 U.S. Dist. LEXIS 14035 (N.D. Ga., 2003); *Distefano v. Federal Bureau of Prisons,* 2004 U.S. Dist. LEXIS 3190 (S.D.N.Y., 2004); *Cato v. Menifee,* 2003 U.S. Dist. LEXIS 21289 (S.D.N.Y., 2003); *Colton v. Ashcroft,* 299 F. Supp. 2d 681 (E.D. Ky., 2004); *Estes v. Federal Bureau of Prisons,* 272 F. Supp. 1301 (S.D. Ala., 2003).

As the decisions noted above have well established, the December 20, 2002, memorandum constitutes a legislative "rule" within the meaning of the APA. The memorandum was not a "mere effort at interpretive guidance but rather a rulemaking exercise designed to reshape the scope of a statutory provision through an administrative statement of lawmaking." *Mallory, supra* at

4. See, *Allen v. Bergland*, 661 F. 2d 1001, 1007 (4th Cir., 1981) (an interpretive rule, to which the APA does not apply, is one that "effectuates no change in policy or law and merely explains or clarifies existing law or regulations.") Here, the rule was meant to divest agency officials of the freedom to "exercise discretion in an individual case." *Monahan*, *supra* at 214. As a result, the notice and comment procedures of the APA apply.

There is no dispute that the BOP failed to follow the notice and comment "procedures set out in 5 U.S.C. §533 before promulgating its new rule regarding the designation of offenders to community confinement facilities." *Iacaboni*, *supra* at 1038-1039. As a result, the rule is invalid and may not be applied to the Petitioner. *Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F. 3d 1365, 1375 (Fed. Cir., 2001).

## III.    CONCLUSION

For all the above reasons, the Petitioner, Aaron J. Rambo, prays the Court issue a writ of *habeas corpus*, grant the Petitioner the requested relief, and order the Respondents to:

1.    recalculate the Petitioner's presumptive good time credit, to reflect an award of 121 days, representing 54 days per year, for each year of the sentence imposed by the Court, prorating the final three months of the sentence; and

2.    exercise discretion in accordance with pre-December 20, 2002, policy, with respect to the Petitioner's suitability for transfer to a CCC for the final six months of his sentence.

AARON J. RAMBO
by his attorneys,

Date: 12/20/04

Matthew H. Feinberg
BBO #161380
Matthew A. Kamholtz
BBO #257290
FEINBERG & KAMHOLTZ
125 Summer St.
Boston, MA 02110
(617) 526-0700